21781

In the Matter of Arthur Elliott Huger BARROW, Jr., and Arnold Samuel Goodstein, Respondents.

(294 S. E. (2d) 785)

*Atty. Gen. Daniel R. McLeod* and *Senior Asst. Atty. Gen. Richard B. Kale, Jr.*, Columbia, *for complainant.*

*A. Camden Lewis* and *John P. Freeman*, Columbia, and *Morris D. Rosen*, Charleston, *for respondents.*

*Aug. 24, 1982.*

*Per Curiam:*

This matter is before the Court for review of the independent recommendations of the Hearing Panel (Panel) and Executive Committee of the Board of Commissioners on

Grievances and Discipline (Board) that respondents A. Elliott Barrow, Jr., and Arnold S. Goodstein, both attorneys, be publicly reprimanded because of professional misconduct. One member of the Executive Committee recommended disbarment.

In August 1978, Dennis Wilcox, a sailor in the U. S. Navy, was severely injured when the CB antenna he was attempting to erect in his yard came into contact with power lines. The antenna was later stored at Carson Insurance Agency across the street from the accident site. Milton Carson, the owner of the insurance agency and a good friend of respondent Goodstein, recommended to Mr. Wilcox's father that Mr. Goodstein's law firm represent his son.

Respondent Barrow became associated with Mr. Goodstein's firm in November 1978. Thereafter he was assigned the Wilcox case. In December 1978 or January 1979, Mr. Barrow went to the insurance agency to retrieve the antenna. While loading the antenna, its mast, and some piping, Mr. Barrow noticed a warning label on the mast and commented that he wished it were not there. Mr. Carson then tore off the label. Mr. Barrow did not attempt to preserve the removed label.

Mr. Barrow contends he drove back to his office and told Mr. Goodstein what happened and Mr. Goodstein said they needed to protect Mr. Carson who would be running for political office in the near future, and they would reveal what happened at an appropriate time.

Mr. Goodstein contends he learned of the incident months later and told Mr. Barrow to "handle" the situation. It matters not when Mr. Goodstein learned of this incident; the fact is they both knew of the alteration of evidence and the seriousness thereof and did not reveal it to the court or defense counsel until late spring or early summer 1980.

In April 1979, Mr. Barrow received an investigative report from the U. S. Navy with photographs attached. On May 14, 1979, Mr. Barrow went to the navy base and was given all of their photographs, some of which showed the warning label attached to the mast. He left the photographs with the Navy.

A lawsuit was filed in May 1979 against the Shakespeare Company, manufacturer of the antenna, and South Carolina Electric and Gas Company (SCE&G). Both Mr. Barrow and Mr. Goodstein were attorneys of record for Wilcox.

On May 15 and 23, 1979, counsel for Shakespeare and SCE&G served Requests for Production of Documents which would cause revelation of the Navy report and photographs. In December 1979, Mr. Barrow answered the Requests for Production of Documents revealing existence of the Navy report but concealing existence of Navy photographs. He revealed and concealed the same in answering Interrogatories propounded by Shakespeare.

Mr. Barrow admits he obtained possession of the photographs on December 18, 1979, but never filed supplemental answers to the discovery documents disclosing the Navy photographs.

For reasons not relevant to this proceeding, Mr. Goodstein assigned another partner, John H. Douglas, to assist in the Wilcox case. In reviewing the Wilcox file and discussing the case with Mr. Barrow, Mr. Douglas learned of the removal of the warning label. He and another partner called a firm meeting.

At the meeting it was determined that former existence of a warning label would be revealed to defense counsel; however, Mr. Goodstein was reluctant to divulge that Mr. Carson had removed the label. It was agreed they would not offer this information but rather let it come out through the normal discovery process.

On April 7, 1980, Mr. Barrow resigned from the firm. Thereafter Mr. Douglas sent letters to defense counsel enclosing Navy photographs and mentioning that two of them showed a warning label on the mast. No explanation was given as to why the label was no longer on the mast.

In answer to Shakespeare's May 28, 1980 Supplemental Interrogatories requesting information regarding the antenna and mast and missing warning label, Mr. Douglas indicated the warning label had been lost but still did not say how this happened.

Finally, on July 16, 1980, the day before Mr. Carson's wife was to be deposed, Mr. Goodstein and Mr. Douglas revealed the complete situation.

We think it was incumbent upon both Mr. Barrow and Mr. Goodstein, who were attorneys of record in the Wilcox case, to promptly inform the court and the defendants that relevant evidence had been materially altered. To proceed to litigation

on the basis of altered evidence and continue through discovery without revealing this matter is appalling. We agree with the Panel and Board that respondents' conduct violated DR 1-102(A)(4), (5) and (6); DR 7-102(A)(2), (3), (4), (5) and (7); and DR 7-102(B)(2), and concur in the recommended sanctions.

Accordingly, respondents A. Elliott Barrow and Arnold S. Goodstein stand publicly reprimanded by this Court for their acts of professional misconduct.

It is so ordered.