**In the Matter of David T. AUSTERN, Respondent.**

**No. 86–1700.**

District of Columbia Court of Appeals.

Submitted March 19, 1987.
Decided April 22, 1987 [1].

Thomas H. Henderson, Jr., Bar Counsel, and Samuel McClendon, Asst. Bar Counsel, Washington, D.C., were on the brief in support of findings of fact and conclusions of law of Hearing Committee Number Three, before the Bd. on Professional Responsibility.

John T. Coyne and John Tremain May, Washington, D.C., were on the brief for respondent challenging the findings of Hearing Committee Number Three, before the Bd. on Professional Responsibility.

Before PRYOR, Chief Judge, and NEBEKER and BELSON, Associate Judges.

PRYOR, Chief Judge:

Respondent is charged with violating DR1–102(A)(4) and DR7–102(A)(7) of the Code of Professional Responsibility by engaging in conduct involving dishonesty and misrepresentation and by counseling or assisting a client in conduct that the lawyer knows to be illegal or fraudulent. Specifically, he is alleged to have assisted in closing a real estate transaction despite being told by his client that the client's escrow account would have insufficient funds to accomplish its stated purpose. The Board on Professional Responsibility finds that respondent's conduct violated both DR1–102(A)(4) and DR7–102(A)(7) and recommends a sanction of public censure.[2] Upon

---

1. Bar counsel and respondent have not submitted briefs before this Court.

2. DR1–102(A)(4) provides:
 Misconduct.
 (A) A lawyer shall not:
 * * * * * *

 (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
 DR7–102(A)(7) provides:
 Representing a Client Within the Bounds of the Law.
 (A) In his representation of a client, a lawyer shall not:

review of the record, we are satisfied that the Board's findings of fact are supported by substantial evidence, and accept its conclusion that respondent knowingly assisted his client in conduct involving dishonesty and misrepresentation. Moreover, we conclude that respondent was under a duty to withdraw from representation of his client in this situation. We also adopt the Board's recommended sanction of public censure.

## I

The relevant facts in this case are largely uncontested. The Hearing Committee found that respondent represented Milton Viorst and a corporation largely controlled by Viorst known as Harmony House Corporation. Viorst and Harmony House converted several buildings to condominiums. Respondent's clients were anxious to go to closing on the various condominium units as quickly as possible with a number of prospective purchasers. Several of these prospective purchasers had been tenants in the buildings before the conversion and were actually in possession of their units. However, the work necessary to bring the units into compliance with the District of Columbia Housing Code had not yet been completed to the satisfaction of the prospective purchasers.

On January 27, 1981, the parties met to attempt to close on as many of the units as then had committed purchasers. Respondent was not able to be present at the beginning of this closing because of other commitments. He arrived later in the evening as the closing was continuing; before his arrival, Viorst was represented by one of respondent's partners. During this time, Viorst and the purchasers drafted an escrow agreement in order to facilitate closing on that date.

\* \* \* \* \* \*

(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

3. Respondent maintained that he signed the escrow agreement the evening of January 27, and agreed to act as the co-escrow agent *before* he

Despite the fact that the purchasers were suspicious of Viorst and entertained doubts concerning his willingness to complete the repairs necessary to the units, they were willing to go to closing on the condition that Viorst deposit $10,000 into the escrow account. The funds in the account were to be available to complete the work on the units if Viorst or Harmony House did not perform. If Viorst did perform, the escrow funds were to be released back to the sellers upon agreement by all parties that the relevant work had indeed been satisfactorily performed.

For their protection, the purchasers insisted that the escrow account be under the control of two co-escrow agents—respondent, who represented the sellers, and Arnold Spevak, who represented the purchasers and who was also acting as the settlement attorney.

Upon respondent's late arrival at the closing, the substance of the escrow agreement had already been agreed upon by the parties. According to respondent, the escrow agreement had been fully drafted, typed, and signed by all the other parties before he arrived. Respondent testified that he was put under considerable pressure to agree to act as the co-escrow agent and that he ultimately yielded and signed the agreement that same evening.

Notwithstanding respondent's testimony,[3] the Hearing Committee found that the escrow agreement, although dated January 27, 1981, had not been finally typed and signed by respondent until the following day. The Hearing Committee's finding was based upon the testimony of Robert Cohen, who acted as the leader of the group of purchasers. The Board concluded that Cohen's testimony was unequivocal and emphatic that the escrow agreement was signed by all of the parties, including

was informed by Viorst that his check for the escrow account was worthless. The Hearing Committee found that he signed the agreement at the following day's continuation of the closing, on January 28, *after* he was informed that Viorst's check was worthless.

respondent, on the second day of the settlement, January 28, 1981.[4]

After respondent's arrival at the closing, Viorst wrote a check in the amount of $10,000, which was intended to fund the escrow account. The check was exhibited to the purchasers and to their attorney, Spevak. It was decided that respondent, as one of the two escrow agents, would take possession of the check and deposit it. Either before or after respondent gained possession of the check, respondent and Viorst stepped out into the hall, out of earshot of the other parties to the transaction. Viorst then informed respondent that there were no funds in the account upon which the check had been written. Respondent considered the ramifications of this revelation, but took the necessary steps to complete the closing on January 28.

Respondent held the worthless check but did not inform his co-escrow agent about the situation. Subsequently, on March 23, 1981, Viorst received a $10,000 non-refundable deposit from a purchaser in connection with the sale of one of the condominium units. He then gave this deposit check to respondent. Respondent promptly opened an interest-bearing savings account at a local bank into which this check was deposited on March 27, 1981. Respondent did not notify his co-escrow agent that the funds were finally on hand, nor did he ever arrange to have his co-escrow agent obtain signature authority over the account.

It was not until the beginning of April, after the time the funds were actually placed in the escrow account, that one of the purchasers made the first claim against the account. That claim was paid from the account, and there is no question that the $10,000 was properly administered by respondent once it was placed into the account.

## II

The Board concluded that the Hearing Committee's findings were supported by substantial evidence, and adopted them. We, in turn, must adopt the Board's conclusions if they are supported by substantial evidence in the record. D.C. Bar R. XI, § 7(3); *In re Smith*, 403 A.2d 296, 302 (D.C. 1979).[5] We conclude that the Board's conclusions are supported by substantial evidence, and adopt them.

The Board, like the Hearing Committee, concluded that respondent assisted his client in committing a fraud—the placement in escrow of a worthless check to induce the purchasers to go to settlement. The Board found that the client and respondent failed to disclose a material fact: namely, that there were insufficient funds to cover the check to be deposited in the escrow account. The Board concluded that this material omission induced the purchasers to go forward to settlement at a time when the repairs of their units had not yet been completed. The Board further determined that by signing the escrow agreement and by continuing to conceal the fact that the check funding the escrow account was worthless during the closing, respondent lulled the purchasers into a false sense of security that their repairs were funded, and thereby used his status as an attorney to lend legitimacy to a transaction which had none. The Board then concluded, as did the Hearing Committee, that by agreeing to act as an escrow agent in this sham transaction, respondent actively and affirmatively assisted his client in completing a fraud, and by doing so violated DR1–102(A)(4) and DR7–102(A)(7).

 We agree with these conclusions. While a client is entitled to representation by his attorney for any objective within the bounds permitted by law, *see* Canon 7, District of Columbia Code of Professional Re-

---

4. The Board concluded that the testimony of respondent, however, was ambiguous as to when he signed the escrow agreement. The Board concluded that Cohen's clear and emphatic testimony, in contrast, provided ample support in the record for the finding that respondent signed the escrow agreement on January 28, 1981.

5. D.C. Bar R. XI, § 7(3) provides in pertinent part: "In considering the appropriate order, the Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record."

sponsibility, he is not entitled to affirmative assistance by his attorney in conduct that the lawyer knows to be illegal or fraudulent. DR7–102(a)(7). Generally, a lawyer should abide by a client's decisions concerning the objectives of the representation, and the lawyer can determine the means to accomplish these objectives, so long as the lawyer does not knowingly assist the client to engage in illegal conduct. District of Columbia Ethical Consideration 7–5; *see also* ABA Model Rule of Professional Conduct 1.2(a). When the attorney is presented with a situation where the client's wishes call for conduct that is illegal or fraudulent, the attorney is under an affirmative duty to withdraw from representation. DR2–110(B)(2), DR7–102(A)(7); Model Rule 1.16(a)(1).[6]

In the instant case, therefore, respondent was under an affirmative duty to withdraw from his representation of Mr. Viorst once he knew that the escrow account Viorst purported to establish to induce settlement was funded with a worthless check. We do not deem crucial the question of whether respondent signed the escrow agreement before rather than after being informed that the check was worthless.[7] In either event, his conduct in furthering the transaction and acquiescing in its fraudulent purpose is violative of DR 1–102(A)(4) and DR 7–102(A)(7).

### III

■ Turning to the issue of an appropriate sanction, the Board rejected the recommendation of the Hearing Committee that respondent receive a reprimand by the Board[8] and concluded that respondent should receive a sanction of public censure by this court. The Board concluded that this case involved dishonesty and misrepresentation on the part of an attorney, and, in a broad sense, the appropriate sanction should be influenced by our decision in *In re Reback*, 513 A.2d 226 (D.C. 1986) (en banc) (imposing six-month suspensions against attorneys who neglected a matter and falsified a client's signature, representing it as genuine to both a notary and the court). The Board noted, however, that a similar suspension here would be too severe a penalty because the focus in *Reback* was on subversion of the judicial process, a more serious violation than is involved here.

The Board determined that a public censure by this court would be the most appropriate sanction in this case because the culpability of the conduct at issue here fell short of that in other cases where attorney dishonesty resulted in a brief suspension. *Compare, e.g., In re Rosen*, 481 A.2d 451 (D.C. 1984) (misrepresentations to court in continuance motions and opposition to motion to set aside attorney's fees warranted 30–day suspension), and *In re Kent*, 467 A.2d 982 (D.C. 1983) (conviction for shoplifting represented conduct involving dishonesty warranting 30–day suspension).

The Board also considered many mitigating factors in this case. It observed that respondent has no prior disciplinary record, and has indeed made notable contributions in the area of legal ethics. The Board also took into account the fact that respondent's conduct was not motivated by the desire for personal gain, and caused no pecuniary injury to the purchasers of the client's

---

6. DR 2–110(B)(2) mandates withdrawal when the attorney "knows or it is obvious that his continued employment will result in violation of a Disciplinary Rule." Here, respondent's continued representation of Viorst under these circumstances would obviously result in a violation of both DR 1–102(A)(4) and DR 7–102(A)(7). Similarly, comment 7 to Model Rule 1.2 states that the lawyer shall not "further" an illegal or fraudulent purpose. It goes on to state that "a lawyer may not continue assisting a client in conduct that the lawyer originally supposes is legally proper but then discovers is criminal or fraudulent. Withdrawal from the representation, therefore, may be required."

7. *See supra* note 3.

8. The Board notes that the Hearing Committee's recommendation called for a "public reprimand of Respondent." The Board concluded that this recommended sanction was the result of a confused mixing of different sanctions—reprimand imposed by the Board, and public censure imposed by this court. The Board therefore assumed, as we do, that the Hearing Committee intended to recommend a reprimand by the Board.

units who relied on the escrow account.[9] The Board further observed that respondent's decision making may have been affected by the extreme animosity which existed between him and his client, Mr. Viorst. The Board noted that respondent may have been too anxious to overcompensate for this ill will and "may have bent over backwards in the client's favor" by taking part in the fraudulent transaction, concluding that respondent's participation may have been motivated in part by a desire to bring the troubled attorney-client relationship to a speedy close.

We will adopt the recommended disposition of the Board "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C. Bar R. XI, § 7(3). While we can find no cases imposing discipline on conduct like that at issue here, the following decisions inform us that the sanction of public censure in this case is not disproportionate. *See, e.g., In re Hadzi-Antich*, 497 A.2d 1062 (D.C. 1985) (holding that respondent's submission of false information in resume sent to prospective employer violated DR1–102(A)(4) and warranted public censure); *Attorney Grievance Commission of Maryland v. Sperling*, 296 Md. 558, 463 A.2d 868 (1983) (reprimand imposed by Court of Appeals after it was discovered that respondent continued on case for three years despite knowledge that his client's witness gave false testimony); *In re Palmer*, 296 N.C. 638, 252 S.E.2d 784 (1979) (court held that respondent had duty to withdraw and imposed censure after respondent agreed to continue in representation despite his knowledge of client's intention to offer perjured testimony); *In re Fulop*, 297 Or. 354, 685 P.2d 414 (1984) (court found violation of DR1–102(A)(4) and imposed public reprimand after respondent attempted to help clients consummate a fraudulent convey-

ance, although the fraudulent transaction did not take place); *Matter of Barrow*, 278 S.C. 276, 294 S.E.2d 785 (1982) (respondents reprimanded by court after failing to produce discovery photographs which would have revealed that critical evidence was altered with counsel's acquiescence).[10]

To be sure, no monetary harm befell anyone as a result of respondent's failure to disclose that the check funding the escrow account was worthless.[11] But it is important to remember that for a number of weeks the purpose of the escrow account was in fact defeated. The protection the account was supposed to offer did not exist. Respondent, as co-escrow agent, owed a fiduciary duty to the client's purchasers to protect their investment; instead, he aided his client in inducing the buyers to proceed to settlement although there was no escrow protection. Therefore, considering the gravity of respondent's misconduct, the mitigating factors considered by the Board, and viewing respondent's violations "in light of all relevant factors," *Reback, supra*, 513 A.2d at 231, we conclude that the Board's recommended sanction of public censure is appropriate.

Accordingly, it is ORDERED that respondent be, and hereby is, publicly censured.

*So ordered.*

---

**9.** The Board noted that since this case is not a civil action for damages, the fact that the purchasers actually suffered no injury is immaterial to the consideration of the ethical obligation of an attorney *not to* assist in fraud or other conduct involving dishonesty or misrepresentation.

**10.** In these other jurisdictions, the reprimand was to be imposed by the highest court of record, making the reprimands the functional equivalent of public censure imposed by this court. *See supra* note 8.

**11.** *See supra* note 9.