In re Brenda L. HOPKINS, Respondent.

A Member of the Bar of the District
of Columbia Court of Appeals.

No. 96–BG–1012.

District of Columbia Court of Appeals.

Submitted Dec. 10, 1996.
Decided Dec. 30, 1996.

Before TERRY, STEADMAN and KING,
Associate Judges.

PER CURIAM:

On May 31, 1996, this court vacated the ruling by the Board on Professional Responsibility ("the Board") which dismissed charges brought by Bar Counsel against respondent for violations of DR 1–102(A)(5),[1] and DR 2–110(B)(2).[2] The Board ruled that Ms. Hopkins did not violate DR 1–102(A)(5).[3] We held to the contrary, however, finding that Ms. Hopkins violated the rule when she failed "to follow-up on her earlier contact with the Register [of Wills] in an effort to ensure that appropriate action would indeed be taken" to protect her client's estate interest. *In re Hopkins, supra,* 677 A.2d at 62 (footnote omitted). The case was remanded to the Board. The matter is again before us with a new Report and Recommendation ("Report"), which is not challenged by re-

1. "A lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice." DR 1–102(A)(5).

2. "A lawyer ... shall withdraw from employment, if ... [she] knows or it is obvious that [her] continued employment will result in violation of a Disciplinary Rule." DR 2–110(B)(2).

3. The Board did not reach the DR 2–110(B)(2) charge because it found that a duty to withdraw was predicated upon some violation of a disciplinary rule. Because it found there was no such violation, the Board also found that there could be no violation of DR 2–110(B)(2). *In re Hopkins,* 677 A.2d 55, 59 n. 6 (D.C.1996).

spondent. The Board concluded, with one member dissenting, that there was no violation of DR 2–110(B)(2). We agree for the reasons stated in the Report which is appended hereto.

■ On consideration of the Board's recommended sanction, with which Bar Counsel agrees,[4] we adopt the Board's recommendation that Ms. Hopkins be publicly censured for her violation of DR 1–102(A)(5). Therefore, it is

ORDERED that the said Brenda L. Hopkins, is hereby publicly censured.

### APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of:

BRENDA L. HOPKINS,

Respondent.

Bar Docket No. 120–92

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

In its opinion of May 31, 1996, the Court of Appeals ruled that Respondent in this case violated DR 1–102(A)(5), which provides that a "lawyer shall not ... [e]ngage in conduct that is prejudicial to the administration of justice." *In re Hopkins,* 677 A.2d 55 (D.C. 1996). The Court asked the Board to make a finding as to whether Respondent also violated DR 2–110(B)(2), which holds that an attorney has a duty to withdraw if she "knows or it is obvious that h[er] continued employment will result in violation of a Disciplinary Rule," and to recommend an appropriate sanction. 677 A.2d at 59 n. 17.

As explained below, we do not find that Respondent's failure to withdraw in these circumstances constitutes an ethical violation. For her conduct prejudicial to the administration of justice, we recommend a public censure.

### Discussion

In finding a DR 1–102(A)(5) violation, the Court significantly expanded the narrower reading adopted by this Board when we decided, 9–0, that Respondent had not violated the rule. The Court said that an attorney's conduct may be improper under the rule "simply because, considering all the circumstances in a given situation, the attorney should know that he or she would reasonably be expected to act in such a way as to avert any serious interference with the administration of justice." 677 A.2d at 61. The improper conduct may involve an action or a failure to take action "when, under the circumstances, he or she should act." *Id.*

In this case, the Court found that when Respondent received the October bank statement for the estate account for which her client was personal representative,

it was obvious that her client had withdrawn more than his share of the funds. At that point, given respondent's knowledge that the statutorily required bond (which would have protected the estate from such a loss) had been waived by Akins, Sr. in reliance on the unfulfilled assurance that Akins, Jr. would establish a joint account, *it was incumbent upon respondent* not just to hope that the Register of Wills would take action, but to follow up on her earlier contact with the Register in an effort to ensure that appropriate action would indeed be taken. By failing to act after that point, respondent not only prejudiced, but destroyed, the Probate Divi-

---

**4.** The Office of Bar Counsel expressed its position in a letter to the court which stated:

We have determined not to take an exception to the report and recommendation of the Board on Professional Responsibility dated July 31, 1996, following the Court's remand ordered May 31, 1996. Although we do not concur in the Board's analysis of former Disciplinary Rule 2–110(B)(2), the DR ceased to be

effective in this jurisdiction on January 1, 1991, and the Board's reasoning does not appear controlling with respect to the counterpart Rule 1.16(a)(1). Moreover, because the Court's reversal of the Board on its interpretation of the DR likely would not result in the imposition of a sanction different from that recommended by the Board, plenary judicial review does not appear warranted.

sion's ability to administer the estate assets. *Id.* (emphasis added).

The question now before the Board is whether it was also incumbent on Respondent at that point, if not before, to withdraw from employment knowing that if she did not, she would violate a Disciplinary Rule. Hearing Committee Number Nine found that she had violated the withdrawal rule. The Board, which did not find a violation of DR 1–102(A)(5) as a predicate for a DR 2–110(B)(2) violation, recommended dismissal of the charge. Eight members of the Board were of the view that we could not find Respondent guilty of failing to withdraw when "[s]he *knows*" or "*it is obvious* that h[er] continued employment will result in violation of a Disciplinary Rule," when we ourselves could not find another charged violation.

One member disagreed. Mr. Fox argued that "there came a time when it should have been obvious to Respondent that her continuing in the case would result in a violation of the rule against engaging in conduct involving a misrepresentation and of the rule that prohibits assisting a client in conduct that the lawyer knows to be illegal or fraudulent." Dissent from the Order of Dismissal at 1–2.

What troubled the rest of the Board about this argument was that these violations, even if valid, were not charged by Bar Counsel. The Board was reluctant to endorse a view of the rule that would permit a finding of a violation without specifying the Disciplinary Rule it was "obvious" would be violated by not withdrawing. Now that a violation has been found by the Court, we address the question of whether there indeed came a time when Respondent knew or it was obvious to Respondent that her conduct was or might be prejudicial to the administration of

justice and whether, therefore, she was under an ethical obligation to withdraw.

In finding precedent for such an obligation, the Hearing Committee cited *In re Austern,* 524 A.2d 680 (D.C.1987). The violations charged in *Austern* were DR 1–102(A)(4), governing dishonesty, fraud, deceit or misrepresentation, and DR 7–102(A)(7), assisting a client in conduct that the lawyer knows to be illegal or fraudulent. The Court, having found those violations, said that Respondent also had an affirmative duty to withdraw under DR 2–110(B)(2) when faced with knowledge of a client's fraud. *Id.* at 683 and n. 6.

We find a controlling distinction in the fact that the attorney in *Austern* knowingly participated in the client's fraud before it was perpetrated. The attorney here did not. She suspected that her client *might* engage in wrongdoing, she feared it, she tried to persuade him to allow her to set up safeguards, but she did not know with the certainty of *Austern* that her client was engaged in fraud.[1]

As the Court pointed out, neither the Board nor the Hearing Committee made a finding as to the precise point at which Respondent was or should have been cognizant that her client, Akins, Jr., was stealing money belonging to the other beneficiary of the estate, Akins, Sr. The Court, computing the highest amount that might be owed to Akins, Sr.,[2] placed that point at least at the time when Respondent received the October 1988 bank statement which reported that "the estate account balance had fallen to $16,213, a sum that would have been far too low to cover [what was owed to Akins, Sr.]" *Id.,* 677 A.2d at 61–62.

The Board does not disagree with this analysis. We merely point out that by this

---

1. Initially, Bar Counsel charged Respondent with violating DR 2–110(C)(1)(b), which provides that a lawyer shall withdraw if her client seeks to pursue an illegal course of conduct. After the hearing was concluded on September 29, 1993, in Post Hearing brief filed with the Hearing Committee on November 8, 1993, Bar Counsel said he "declined to pursue the DR 2–110(C) charge." Brief of Bar Counsel at 10.

2. This amount includes a disputed $10,000 family allowance and $4,775 in reimbursable ex-

penses, in addition to Akins, Sr.'s one-third share of the net proceeds of the estate. Given that the estate consisted of slightly more than $46,000, the proceeds from the sale of the deceased's house, after subtracting $14,775, Akins, Sr. would have been entitled to some $10,408 as his one-third share. The resulting total of $25,183 would have had the somewhat anomalous effect of giving Akins, Sr. a larger share than Akins, Jr. in the estate.

time, Respondent had reported her concerns to the Register of Wills. She had also consulted Nicholas Ward, a probate expert, in July 1988, who testified at the hearing that he advised Respondent that notifying the Register of Wills, not withdrawal, was then the most effective way to proceed. TR. at 219.

With the clarity of hindsight, it is easy to say that an attorney should have washed her hands of the whole messy affair and withdrawn from the case. At the time, however, Respondent appeared to be floundering in uncertainty about her duty to her client versus her ethical responsibilities. In this state, she continued to allow Akins, Sr. and his lawyer to believe she was safeguarding the assets when she was not, and she failed to follow up her report of her concerns to the Register of Wills, who did nothing for four months after Respondent visited her. The Board's problem is whether these actions constitute a violation of the rule under which she was charged.

Respondent was not charged, as Austern was, with dishonesty or misrepresentation or with aiding her client in committing illegal or fraudulent acts, charges which, judging from the record, might have been sustained. The violation of DR 2–110(B)(2) with which she was charged, assumed certainty by the attorney of the violation of another disciplinary rule. Yet the other violation with which she was charged, DR 1–102(A)(5), was so little obvious to the nine of us on the Board that we, in fact, recommended dismissing it. The Court has now defined DR 1–102(A)(5) so that in the future attorneys stand alerted that the Rule covers a wide range of actions and inaction. However, to hold an attorney responsible for discerning a violation that we in the disciplinary system have spent many hours arguing about seems to us unfairly retroactive.

As we stated in our original Report, we agree that withdrawing would have separated Respondent from the "taint" of her client's probable wrongdoing, and it seems clear that she had the right to withdraw when the client first indicated reluctance to set up a joint account. The Hearing Committee pointed out that DR 2–110(B)(2) was intended for just such cases as this, to prevent a lawyer from becoming "tarred" by a client's misdeeds. The withdrawal rule "affords the lawyer an opportunity to remove herself from a precarious situation where further involvement, and especially silence, could only make matters worse. That was the case here." Hearing Committee Report at 16. The question is whether she acted in violation of an ethical rule by not withdrawing. A permissive withdrawal situation is different from one in which it is unethical for an attorney *not* to withdraw, when withdrawal becomes the *only* possible recourse. Here Respondent believed she had other options; their ineffectiveness does not in itself make it "obvious" that her withdrawal was required under the rule.

It is overwhelmingly tempting to conclude that Respondent should have done more to prevent her client from bilking the estate, but was it "obvious" at the time that she should have withdrawn? Respondent argues that it was not and, moreover, that she believed withdrawal by October or November would have accomplished nothing. In July or August 1988, withdrawal could have prevented the theft entirely, but at the time, she had little reason to withdraw since the client had *not yet* stolen and conceivably *might not* steal. By the time the bank statement for October arrived, showing a perilously low balance, Respondent believed she had put the matter in the hands of the Register of Wills.

The Court has said that at that point she should have followed up with the Register of Wills and that "[b]y failing to act after that point, respondent not only prejudiced, but destroyed, the Probate Division's ability to administer the estate assets." *Hopkins*, 677 A.2d at 62–63. On this basis, the Court found a violation of DR 1–102(A)(5). We recognize that the Court might also be drawn to the conclusion that by failing to withdraw after that point, Respondent also violated DR 2–110(B)(2). The Board, however, views the attorney's ethical obligations *at the time* and *under the particular circumstances* as less clear than the standard of "obvious" necessary to trigger a withdrawal violation. In

the future, we expect that the opinion already issued by the Court in this case will cause attorneys to take greater care to separate themselves from "renegade" clients.

### *Conclusion*

Based on the complex circumstances surrounding Respondent's actions in this case, we decline to find a violation of DR 2–110(B)(2). Bar Counsel and the Hearing Committee recommend a public censure as the appropriate sanction for the two violations. The Board sees no reason for a different sanction for the single violation of DR 1–102(A)(5) and recommends that Respondent be publicly censured.

BOARD ON PROFESSIONAL RESPONSIBILITY

BY:_____

Kate Blackwell Zumas

Date: July 30, 1996

All members concur in this Report and Recommendation except Mr. Fox, who has filed a separate dissenting opinion.

### *DISSENT OF HAMILTON P. FOX, III*

For the reasons set out more fully in my dissent from the Board's Order of Dismissal dated June 29, 1995, I believe that Respondent violated DR 2–110(B)(2), failure to withdraw when the lawyer knows or it is obvious that her continued employment will result in a violation of a disciplinary rule. I believe that by continuing to represent Akins, Jr., Respondent assisted him in conduct that she knew to be illegal or fraudulent and implicitly misrepresented to Akins, Sr. that she obtained signatory power on the bank account as she had promised she would. I also adhere to my belief that a 30–day suspension is appropriate in this case since Respondent's failure to act resulted in Akins, Sr.'s losing his entire inheritance.

Hamilton P. Fox, III
Chair

Date: July 30, 1996