**In re Charles P. CLARK, Ruth A. Clark, Debtors.**

**Bankruptcy No. 2–87–01736.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 9, 1987.

Douglas S. Roberts, Isaac, Brant, Ledman & Becker, Columbus, Ohio, for debtor.

William B. Logan, Columbus, Ohio, for Federal Land Bank.

Thomas R. Straus, Steubenville, Ohio, trustee.

---

## ORDER ANNULLING AUTOMATIC STAY AND VALIDATING PRIOR ACTION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a motion, filed on June 15, 1987 by The Federal Land Bank of Louisville ("FLB"), seeking, in essence, retroactive relief from the automatic stay imposed by § 362 to preserve certain actions taken by FLB which technically violated the stay injunction. That motion was opposed by Charles and Ruth Clark, the debtors in this Chapter 7 bankruptcy case. The matter was scheduled for hearing in Steubenville, Ohio, but at the request of the parties, the issue was submitted on briefs.

The facts in this matter, as stipulated by the parties in a pleading filed August 26, 1987 are as follows:

"1. FLB is a secured creditor of the Debtors holding a note and mortgage. The note and mortgage are secured by the Debtors' real estate, a 162.898 tract located in Somerset Township, Belmont County, Ohio.

2. As further security, FLB holds certain capital stock with a value of $5,625.00.

3. The sum owing to FLB by the Debtors is $111,713.96 as of April 24, 1987, plus interest as provided in the note.

4. The Debtors defaulted on their obligations pursuant to the note and mortgage and the loan was accelerated on April 23, 1986.

5. On or about January 7, 1987, the Debtors were advised that the servicing of their loan was being assigned to the Farm Credit System Capital Corporation.

6. On January 19, 1987, the Belmont County Common Pleas Court entered a judgment entry in Case No. 86–CIV–138, styled the Federal Land Bank of Louisville v. Charles P. Clark, et al ...

7. The subject property was appraised by the sheriff's department for $90,000.00.

8. FLB obtained an appraisal of the subject property on February 19, 1987 which indicated an appraised "as is" value of $102,000.00.

9. The subject property is also encumbered by a lien to Farmers Home Administration in the sum of $83,885.00.

10. The Debtors filed their Chapter 7 petition on April 24, 1987.

11. The foreclosure sale of the property in which FLB is secured was advertised. The sale occurred at approximately 10:05 a.m. on April 29, 1987.

12. Ronald J. Spiker, Credit Specialist with the Farm Credit System Capital Corporation attended the foreclosure sale and would testify that neither he nor the sheriff, nor any individual associated with FLB to his knowledge had either formal notice or actual knowledge of the fact of the bankruptcy filing by the Debtors prior to the foreclosure sale. Mr. Spiker would further testify that he received a call from counsel for the Debtors, Judith Fisher, at 2:20 p.m. on April 29, 1987 notifying FLB that the Clarks had filed a Chapter 7. The Debtors have no reason to dispute this testimony of Mr. Spiker.

13. At the foreclosure sale the property was sold to FLB for the sum of $82,000.00.

14. Ronald Spiker would testify to the Court that publication costs to FLB to readvertise are approximately $700.00 and the interest opportunity cost to FLB for each additional month of delay is $850.00 per month.

15. The Trustee mailed a report of no assets in the above referenced case on July 7, 1987."

The legal issue before the Court is whether the automatic stay in effect against FLB should be terminated on a retroactive basis such that the foreclosure sale of the debtors' real property, conducted April 29, 1987, will be validated and permitted to stand.

Initially, the Court finds that neither the debtors nor Thomas R. Straus, the duly-appointed Trustee in bankruptcy, ("Trustee") obtained an order continuing the stay pending a final hearing on FLB's request for relief. Therefore, pursuant to 11 U.S.C. § 362(e), the automatic stay terminated as to FLB thirty days after June 12, 1987, when FLB served its request for relief upon the debtors and the Trustee. That finding does not resolve this matter completely, however, since FLB seeks a finding from this Court that the foreclosure sale of April 29, 1987 was a valid sale despite the unrelieved existence of the automatic stay at that time.

FLB argues that this Court has power to terminate the reach of the automatic stay retroactively and that such power should be exercised in this case. The debtors, on the other hand, assert that the automatic stay is and was effective against FLB, whether or not FLB had actual knowledge of the pendency of the bankruptcy case, and that any actions taken in violation

thereof are *void ab initio* and cannot, and should not, be validated retroactively.

■ Although case law is inconsistent with regard to whether actions taken in violation of the automatic stay are void or voidable, the Court finds that the better view is that such actions should be, and are voidable, at the discretion of the Court.

In an action retroactively validating a foreclosure sale which occurred without relief from the automatic stay, the Bankruptcy Court in the district of Minnesota observed:

"By strict, literal definition, a void instrument or transaction is one which is wholly ineffective, inoperative, and incapable of ratification. A void act would, therefor, have no force or effect "so that nothing could cure it". *Black's Law Dictionary*, 1411 (5th Ed.1979). The word voidable on the other hand, describes a defective transaction or act that may be declared void, yet may be cured by confirmation or ratification." *In re Oliver*, 38 B.R. 245 at 247 (Bankr.D.Minn.1983).

Provisions within the Bankruptcy Code, such as 11 U.S.C. § 542(c) (transfers by parties without knowledge of a bankruptcy case) and 11 U.S.C. § 549 (validation of certain post-petition transfers) specifically protect certain actions taken in violation of the automatic stay. Those statutory provisions also lend credence to the argument that such actions must be voidable, rather than void. *Hadsell v. Philadelphia Life Insurance Co. (In re Fuel Oil Supply and Terminating, Inc.,* 30 B.R. 360 (Bankr.N.D.Tex.1983)). As Judge Flowers stated:

... the characterization of every violation of § 362 as being absolutely void is inaccurate and overly broad. *Hadsell*, at 362.

Consideration of the retroactive validation power also arose under the now-repealed Bankruptcy Act of 1898. Although the stay under that Act arose under certain former Rules of Bankruptcy Procedure, courts occasionally validated actions taken without formal relief from the stay. *Rosenfeld v. 122–24 East 25th Street Corp.*

*(In re Silverman* ), 42 B.R. 509, 12 Bankr. Ct.Dec. (CRR) 100 (Bankr.S.D.N.Y.1984).

■ Use of the word "annul" in 11 U.S. C. § 362(d) gives further credence to the power of this Court to validate appropriate actions taken in violation of the automatic stay. Annul, meaning "to deprive of all force and operation",[1] is best construed as a meaningful alternative to "terminating, modifying, or conditioning," found in § 362(d). Annul implies a reach-back ability. Accordingly, the Court finds it has power, in appropriate circumstances, to annul the effect of the automatic stay in a manner which retroactively validates certain actions. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir.1984).

■ Having found that power exists to validate retroactively actions taken in violation of the stay, the Court then must determine if this situation is appropriate for the exercise of such discretionary power.

The Court finds that neither the debtors nor their attorney informed FLB of the pendency of their bankruptcy case prior to the foreclosure sale, despite their apparent knowledge that their property was scheduled for a sheriff's sale. Since the bankruptcy petition was filed in a different county from that in which the real property was located, no knowledge of the pendency of the bankruptcy case could be imputed to FLB. Although that fact doesn't affect the existence of the stay; as a practical matter, it impacts upon the equities of the situation.

It is also clear that the Trustee had no interest he wished to protect in the debtors' real property. The Trustee failed to respond to FLB's Motion for Relief from Stay, and, on July 8, 1987, the Trustee filed a final report stating that there were no assets in the estate which were not properly claimed exempt, overencumbered with liens, or of inconsequential value. Therefore, FLB's actions in unknowingly proceeding with the foreclosure sale on July 29, 1987 had no effect either upon the Trustee or the bankruptcy estate.

**1.** *Black's Law Dictionary* 83 (5th Ed.1979).

The Court finds further that no harm has occurred to the debtors as a result of FLB's actions. The stay expired in any event by July 12, 1987, a date already past. There is simply no reason to require FLB to begin foreclosure proceedings again where the debtors could easily have prevented the harm, no impact exists upon the estate, and no contest exists as to FLB's entitlement for relief.

Based upon the foregoing, the Court annuls the effect of the automatic stay upon FLB. Such annullment shall be retroactive to April 24, 1987, and FLB shall be free to pursue its remedies against the debtors as of that date, consistent with the terms of its contractual relationship with the debtors and with applicable law.

IT IS SO ORDERED.