In re **CONSOLIDATED PARTNERS INVESTMENT CO., Debtor.**

Joel H. **RATHBONE,** Trustee, Plaintiff,

v.

John **LAKE, et al., Defendants.**

Bankruptcy No. B89–4851.
Adv. No. B92–1301.

United States Bankruptcy Court,
N.D. Ohio, E.D.

July 2, 1993.

Amendment to Memorandum of Opinion and Order July 26, 1993.

Michael P. Harvey, Cleveland, OH, for plaintiff.

Thomas A. Kondzer, Westlake, OH, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

In this Chapter 7 proceeding, the case trustee, Joel H. Rathbone, (the Trustee), seeks to avoid certain prepetition and postpetition transfers of real property and further seeks to sell the same property once avoided.

The dispositive issues before the Court are (1) whether the subject real property transfers are avoidable postpetition transfers in view of the doctrine of equitable tolling, and, (2) whether such transfers constituted a violation of the automatic stay of § 362(a) of the Bankruptcy Code. In its earlier ruling, the Court granted partial summary judgment to the Defendant regarding §§ 544 and 548 complaint allegations.

Consolidated Partners, Investment Company (the Debtor) is owned and operated by one Melvin W. Mitchell. The nature of the Debtor's business is buying and selling real estate. The Debtor's operating capital is generated primarily through loans from individuals who would make such loans in exchange for the Debtor's promissory note at a specified rate of interest. Defendant John Lake (Lake) was one of several individuals who loaned the Debtor funds for its real estate investment purposes. The Debtor made periodic payments to Lake on the attendant loan notes. By February 13, 1990, the amounts loaned by Lake to the Debtor exceeded $78,000.00.

By late 1988 or early 1989, the Debtor experienced cash flow problems causing it to default on interest payments due on the outstanding notes owed to its several investors. In order to alleviate this situation, the Debtor embarked on a plan to liquidate its real estate holdings and use the proceeds to pay down the debt to its investors. Additionally, it encouraged its note holders to exchange their notes for real estate owned by the Debtor. This latter practice was engaged between early 1989 and early 1990.

On November 24, 1989, three of the Debtor's note holders filed an involuntary petition for relief against the Debtor. An order for relief was entered on February 26, 1990. During the period between the petition filing date and the Court's entry of an Order of Relief, Defendant Lake agreed with the Debtor to exchange a portion of his notes for certain property owned by the Debtor. To effectuate this effort, the Debtor caused the preparation of three deeds which were executed on February 15, 1990. One of the deeds was recorded on February 22, 1990, while the others were recorded in December of 1990. This proceeding ensued on April 20, 1992 with the Trustee's Complaint To Avoid Transfers.

■ In view of its clarity, an exercise of this Court's equitable powers to toll the limitation period would be unwarranted and such relief is hereby denied. This lack of timely action is, in some respect, analogous to the U.S. Supreme Court's ruling regarding the trustee's duty to timely object to exemptions claimed by a debtor. *Taylor v. Freeland & Kronz*, 503 U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Even where there is no colorable legal basis for the

claim, a trustee's failure to timely object (or avoid) precludes prosecution beyond the limitation period. The equitable tolling standard for this Court was enunciated in *Chrysler Workers Assn. v. Chrysler Corp.*, 663 F.Supp. 1134 at ¶ 1151 (N.D. Ohio W.D.1986). Therein, the following elements are required to be proved by the party seeking the equitable tolling:

1. A wrongful concealment by the defending party;
2. Failure of a party to discover the operative facts within the limitation period;
3. The party's due diligence to discover the facts.

■ The present cause of action to avoid is time-barred by § 549(d)(1) of the Code which requires that the avoidance action be commenced by the trustee no later than two years after the date of transfer, regardless of when the trustee was appointed. Generally, courts strictly enforce this statute of limitation. *In re Metropolitan*, 125 B.R. 556, 557 (Bankr.D.Minn.1991); *In re 31–33 Corp.*, 100 B.R. 744 (Bankr. E.D.Pa.1989). Even where a case undergoes conversion to another chapter under the Bankruptcy Code, as occurred in the present case, § 549(d)'s statute of limitations is not tolled during the pendency of the case preconversion. *See, In re H.I.A. of Mt. Vernon*, 80 B.R. 944 (Bankr.S.D.Ill. 1987). ("Section 549(d) creates a measurable problem for the Chapter 7 trustee who replaces a Chapter 11 debtor who had failed to act while the statutory clock is ticking.... [T]he trustee may be precluded from acting even before his appointment. However, there is no provision in § 549, or in any other section of the Code, that would permit the statute to be tolled.").

■ The doctrine of equitable tolling is inapplicable to the matter at bar. Although, the Bankruptcy Court is a court of equity, its equitable powers should not be exercised where the Congress has clearly manifested its intent in a manner opposite to that which equitable relief is sought. There exists no evidence, or insufficient evidence to show where the Defendant John Lake concealed, or committed a fraud relative to the subject transfers of real property during the gap period. In fact, he caused each transfer to be duly recorded. Under § 303(f), the Debtor, as an involuntary Debtor, was authorized to continue its business operations unrestrained by the provisions of § 363 of the Code.

Section 549(d)'s language is clear to provide a two-year limit on the type of avoidance actions presently sought by the Trustee. The Trustee was appointed in August of 1990. The subject transfers occurred on February 15, 1990. The Trustee's appointment as permanent Trustee occurred within the two-year limitation period, on August 14, 1990, allowing him more than sufficient time to exercise his avoidance powers under § 549(a), if warranted. That did not occur. Even prior to the Trustee's appointment as permanent Trustee, an interim trustee was appointed once the case was reconverted to Chapter 7 from a case under Chapter 11. During this latter period, the interim trustee could have timely sought avoidance of the subject transfers, had the interim trustee desired to do so. No such action was taken. The statutory tolling of limitation periods addressed under 11 U.S.C. 108 are not applicable. Section 549(d) of the Code provides an unambiguous expression of Congress' intent to restrict such avoidance actions to a two-year period from the date of transfer:

11 U.S.C. § 549(d):

An action ... may not be commenced after the earlier of—

1) two years after the date of the transfer sought to be avoided; or
2) the time the case is closed or dismissed.

■ In an effort to circumvent the import of § 549(d), the Trustee caused his original complaint to be amended to allege a violation of the automatic stay under § 362(a) of the Code. Such an effort is not a novel approach, and it is also unavailing in this action. Even where violations of the automatic stay are generally void, postpetition transfers of estate property which violate the stay are only voidable, at the

trustee's discretion, since § 549 provides that the trustee "may avoid" such a transfer. *In re Clark*, 79 B.R. 723, 725 (Bankr. S.D.Ohio 1987). Thusly, § 549 provides an exception to § 362(a) since § 549 would be rendered useless if postpetition transfers were treated as being absolutely void. *In re Brooks*, 79 B.R. 479, 480 (9th Cir. BAP 1987), *aff'd.*, 871 F.2d 89 (9th Cir.1989). At bar, however, there was no violation of the automatic stay. The subject transfers were made voluntarily by the Debtor. The transfers did not constitute an act against the Debtor or property of the Debtor. Therefore, no violation of § 362(a) occurred. In brief, § 549 is the exclusive means of avoiding postpetition transfers of estate property.

*Relevant Testimony:*

In this action, the Trustee was appointed on August 14, 1990. Once appointed, he retained the services of a real estate broker to retrieve and examine the Debtor's office records. The nature of the Debtor's business was buying and selling real estate. His investigation of those records began approximately three months after the first meeting of creditors. (Rathbone, Direct).

On cross-examination, the Trustee testified that he first reviewed the Debtor's records in 1990 or 1991, whenever his broker received the records. He has no recollection of ever speaking with the Defendant, John Lake, Melvin Mitchell or Tilden regarding the three real estate transfers (*Id.*). Regarding the West 114th Street property transferred to Lake (Ex. CCC), the Trustee did not know when the deed was delivered (*Id.*), but believed it was transferred in February of 1990. Upon examination, this deed shows a recording date of February 22, 1990. In earlier testimony, the Trustee said that the basis for his concealment allegation was premised on his understanding that the subject deeds were not filed until long after the transfers occurred. Clearly, Ex. CCC, the West 114th Street deed, shows otherwise, with a recording date one week after the deed was executed. Once this exhibit was demonstrated to the Trustee, he testified that this

particular deed was part of a pattern of concealment, yet the evidence was to the contrary. (Rathbone, Cross–Exam.).

Similarly, the St. John Street property (Ex. AAA) voluntarily transferred by the Debtor to Lake, shows a February 15, 1990 transfer, with a recording date of December 4, 1990. Although filed as a matter of public record, the Trustee considered this deed as a concealment. The third property transferred by the Debtor to Lake was the Thompkins Avenue property (Ex. EEE). Its deed was executed on February 15, 1990 and was recorded on December 4, 1990. All such recordings were made in the County Recorder's office. Clearly, the property transfers were made notoriously and were duly recorded as a matter of public record. Certainly, there was no concealment.

Additionally, the Debtor's "Statement of Financial Affairs" (Ex. I) was duly filed on March 23, 1990 with the petition schedules. Therein, at Exhibit A to the Statement, the subject transfers were clearly disclosed under the caption, "Properties Transferred to Satisfy Investor Notes". Significantly, the Trustee testified that he had read the Debtor's schedules as early as 1990. (Rathbone, Cross and Re–Direct). If that is factual, then the Trustee had actual knowledge of the transfers in sufficient time to avoid them, had he chose to do so. Even the Debtor's amended Statement of Financial Affairs did nothing to diminish the earlier disclosure of the transfers. (*Id.*).

Further, the Trustee possessed other records of the Debtor which would dispel any notion of an attempt to conceal the subject transfers. Those records, as exhibited, were inclusive of tenant account records (Ex. NN), check memos (Exs. PP and QQ), and correspondence directed to various tenants of the Debtor which apprised them of the change in ownership. (Exs. OO, RR, SS, TT, and YY). Not only were those documents in either the Trustee's or his agent's possession, they possessed the documents within the allowed avoidance period to effect a timely avoidance under § 549.

Additional proof of timely and proper disclosure of the property transfers was

adduced in Ex. ZZ's, Attachment A ("Changes since the original petition") which clearly showed that John Lake was the transferee of the subject properties. Upon demonstration during cross-examination, the Trustee testified that he was aware in 1990 that these properties had been transferred to Defendant Lake.

Exhibits YY, WW, VV, and Ex. UU were all objected to at trial by Plaintiff on the basis of either the attorney-client privilege or work product privilege, to which the Court deferred its ruling. Finding that the Debtor voluntarily surrendered these documents prior to the trial to Defendant's counsel upon request, any such privilege that may have existed was effectively waived, and the objection thereto is hereby overruled. Further, the attorney-client privilege is exercisable only by the client, and no such exercise was made by the client respecting the documents objected to at the time he voluntarily made them available to the Defendant. *Nixon v. Sampson,* 389 F.Supp. 107 (D.C.D.C.1975), *stay granted,* 513 F.2d 430 (D.C.Cir.1973). Interestingly, those same documents were voluntarily made available to the Defendant during pretrial discovery periods, yet the Plaintiff Trustee at trial objects on privileged grounds to the introduction of the same documents at trial. Once a privilege is waived, it may not be resurrected later in regard to the same documents. *In re Grand Jury Proceedings,* 570 F.2d 562 (6th Cir.1977) Failure to clearly claim a privilege in the first instance barred alleged client from later asserting privilege); *Standard Chartered Bank v. Ayala International Holdings, Inc.,* 111 F.R.D. 76 (S.D.N.Y.1986) (To constitute a waiver of the attorney client privilege, production of documents must be voluntary or done under procedures that are careless and indifferent to the consequences of disclosing confidential information.)

Correspondence addressed by the Trustee's counsel as early as October 30, 1990 advised the Trustee of both prepetition and postpetition transfers made by the Debtor (Exs. YY, WW, VV and UU). These several letters removed any uncertainty that the Trustee was timely apprised of the postpetition transfers for him to commence any avoidance actions he deemed to be warranted. Very simply, he took no action in view of this acquired knowledge. Even where the Trustee may not have personally possessed certain documents which evidenced the property transfers, his retained real estate broker, Sandra Goldberg, possessed such business records of the Debtor (Rathbone, Direct).

Accordingly, complaint allegations under Count I were earlier disposed of by summary judgment favorable to Defendant Lake. In view of the foregoing findings of fact and conclusions of law, regarding Count II, judgment is rendered in favor of Defendant John Lake. Regarding Count III, the Trustee's action to sell the subject real properties, if the transfers were avoided, that Count has been rendered moot by reason of the Court's finding that the subject postpetition transfers are not avoidable. To the extent that a more specific reading may be deemed warranted, however, judgment on Count III is rendered in favor of the parties defendant, as the subject transfers are not avoidable pursuant to § 549(d)(1).

As no specific allegations have been supported by any evidence regarding the parties defendant other than John Lake, judgment is further rendered in favor of Defendants Timothy J. McCormack (County Auditor), Frank Russo (County Recorder), and Francis T. Gaul (County Treasurer), who were joined as parties defendant solely for the purpose of having this Court determine the amount, if any, of unpaid real estate taxes or assessments against the three properties in question. Regarding Defendant Lake's Counterclaim # 1, such is rendered moot in view of the Court's ruling on Complaint Count II.

In view of the above findings of fact, (1) there was no wrongful concealment by the Defendant John Lake; (2) the Trustee failed to discover operative facts within the limitation period due to the fault of no one but himself; and (3) the Trustee failed to exercise due diligence in discovering the facts to timely prosecute the attempted

avoidance actions. As such, the doctrine of equitable tolling is not applicable to the matter at bar, and the Trustee's action to avoid under § 549 is time-barred by § 549(d). Further, there was no violation of the provisions of § 362(a). Accordingly, the Defendant's motion for judgment as a matter of law is granted, and the Complaint is dismissed. Costs are awarded to the Defendant.

IT IS SO ORDERED.

## AMENDMENT TO MEMORANDUM OF OPINION AND ORDER

■ This matter is before the Court on John Lake's (Lake) Motion for Allowance of Bill of Costs. Said motion was timely filed after the Court issued a bench ruling on June 11, 1993 granting Lake's Motion for Judgment as a Matter of Law. The Judgment Entry was entered on July 2, 1993.

The Court finds that the amounts sought by Lake, for the most part, are properly taxable as costs pursuant to Bankr.R. 7054 and 28 U.S.C. § 1920. Pursuant to Bankr.R. 7054, costs may be allowed to the prevailing party except when a statute of the United States or these rules otherwise provide. Section 1920 of Title 28 specifies those items that a judge or clerk of any court of the United States may tax as costs:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title.

28 U.S.C. § 1920

Although Fed.R.Civ.P. 54(d) provides for a presumption that costs will be paid by the unsuccessful litigant, [*White & White, Inc. v. American Hospital Supply Corp.*, 786 F.2d 728, 730 (6th Cir.1986); Fed.R.Civ.P. 54(d) ], the Bankruptcy Rules specifically exclude application of Fed.R.Civ.P. 54(d) to adversary proceedings in the Bankruptcy Court. Bankr.R. 7054(a). Rather, Bankr.R. 7054(b) provides for taxing of costs in adversary proceedings in the Bankruptcy Court. That rule provides that the Court "may" allow costs to the prevailing party, as compared to Fed.R.Civ.P. 54(d) which provides that costs "shall" be allowed. Accordingly, the Bankruptcy Court is provided substantial discretion in awarding costs. Thusly, decisions as to costs awarded pursuant to Fed.R.Civ.P. 54(d) may be helpful but are not controlling in awarding costs under Bankr.R. 7054(b).

The costs for a court reporter for the deposition of Joel Rathbone are not properly taxable as costs due to the fact that Lake noticed that particular deposition. As such, the costs are an expense to be borne by Lake as opposed to a cost to be taxed against the Trustee. *See, Murphy v. Amoco Production Co.*, 558 F.Supp. 591 (D.C.N.D.1983), *aff'd.*, 729 F.2d 552 (8th Cir.1984). The balance of the costs in the amount of $1,050.40 are properly taxable.

The Trustee's objection is not well founded. The Trustee argues that costs may not be taxed to the Trustee due to the fact that he is the Trustee and that the effect is to reduce the funds in the estate available to pay creditors. The Trustee gives no authority for such a proposition. Although decisions under Fed.R.Civ.P. 54(d) permit consideration of indigency in awarding costs, the Bankruptcy Rules specifically provide for taxing of costs in adversary proceedings. No exceptions for the Trustee exist. *See,* Bankr.R. 7054. Moreover, this Court notes that not only did the Trustee initiate this adversary proceeding, but he did so beyond the applicable statute of limitations.

The Trustee's objection is also based on the fact that Lake did not call witnesses to the stand or tender exhibits into evidence. Thus, the Trustee argues, related expenses should not be taxed as costs. The Court notes that Lake did not call witnesses or tender exhibits due to the fact that Lake's

Motion for Judgment as a Matter of Law was granted once the Trustee rested his case. Thus, Lake had no opportunity to call witnesses or tender exhibits. Nor was it incumbent upon him to do so. Even if Lake had presented his case and failed to call certain witnesses or introduce exhibits, such is not a basis to deny costs.

The standard enunciated in 28 U.S.C. § 1920(4) for recovery of costs regarding copies of papers is "necessarily obtained for use in this case." This Court finds that copies of exhibits were necessarily obtained for use in the case. Indeed, this Court's Trial Order mandates that three copies of exhibits be submitted to the Court prior to trial.

A witness fee is a statutory requirement to the subpoena process. Such must be paid in order to subpoena a witness. Bankr.R. 9016; Fed.R.Civ.P. 45. Subpoenaing a witness is not a guarantee that a witness will actually testify in a trial proceeding. Counsel may also change his or her trial strategy mid-trial respecting the use of a subpoenaed witness. These considerations are accommodated by 28 U.S.C. § 1923(3) which provides for unconditional taxing of costs of witness fees without any consideration of whether they were necessary for use in the case.

Having considered the pleadings and arguments of counsel, the Court hereby grants Lake's motion, in part, and amends its Order of July 2, 1993 to tax costs to be paid by the Trustee in the amount of $1,050.40.

The Trustee's Motion to Strike Lake's Response Brief is granted as said motion was filed in contravention of Local Bankruptcy Rule 4:0.8(c).

IT IS SO ORDERED.