### In re Iverson O. MITCHELL, Respondent.

### A Member of the Bar of the District of Columbia Court of Appeals.

### No. 97–BG–1630.

District of Columbia Court of Appeals.

Argued Sept. 17, 1998.

Decided March 18, 1999.

---

Iverson O. Mitchell, pro se.

Ross T. Dicker, Assistant Bar Counsel, with whom Leonard H. Becker, Bar Counsel, was on the brief, for petitioner, the Office of Bar Counsel.

Before STEADMAN and RUIZ, Associate Judges, and NEWMAN, Senior Judge.

RUIZ, Associate Judge:

The Board on Professional Responsibility ("the Board") has recommended that respondent, Iverson O. Mitchell, be publicly censured for violating three rules of professional conduct: 1.15(b) (failure to promptly deliver to a client any funds that he or she is entitled to receive); 1.16(d) (failure to take timely steps to the extent reasonably practicable to protect a client's interests); and 8.4(c) (misrepresentation). Respondent's main contention before this court is that the United States Bankruptcy Code prevented him from complying with the rules of professional conduct and that, consequently, the Board's de-

terminations of violations and sanction recommendation should not be adopted by this court. We find no merit in this argument or in respondent's subsidiary arguments and adopt the recommendation of the Board that respondent be publicly censured.

## I.

### A. *The Underlying Facts.*

Respondent was admitted to the District of Columbia Bar in 1969. At all times relevant to this case, he was a partner in his law firm and its chief financial officer. He had no record of professional discipline for over twenty-five years, before Bar Counsel filed a petition in this case on June 25, 1995. The charges arise from complaints filed separately with Bar Counsel in July and September 1994 by two clients of the firm, Joyce Allen ("the Allen matter") and Murray Steinberg ("the Steinberg matter"), respectively. Both complaints concerned the failure by respondent, as financial officer for the law firm, to promptly pay them funds which they were entitled to receive.

#### 1. *The Allen Matter.*

In the fall of 1992, Joyce Allen retained Karl Carter, who was of counsel to respondent's firm, to represent her in two legal matters in the District of Columbia. Carter was successful in obtaining a settlement in one of the cases on Allen's behalf in July 1993, and the firm received a check in the amount of $4,750 which Allen endorsed over to the firm. Respondent, as financial officer for the firm, deposited the check into the firm's escrow account.

After a series of conversations regarding disbursement of funds to Allen, on July 14, 1993, respondent sent Allen an invoice proposing to pay her $1,982.95 out of the settlement proceeds. Allen objected to the proposed distribution, arguing that the firm's fees were too high. That same day, Allen filed a complaint with Bar Counsel, alleging that the firm had failed to give her a proper written agreement for services and had charged an additional $1,000 retainer fee to which she had never agreed. Upon inquiry by Bar Counsel, in September 1993, respondent denied Allen's allegations and wrote

that he considered the matter a fee dispute that should be referred to the fee arbitration panel. Respondent did not make any further attempt to pay Allen the $1,982.95 the firm originally had offered to disburse to her.[1] Respondent failed to inform Bar Counsel when his firm's escrow account was attached in November 1993, following a $422,846 judgment in favor of the firm's landlord for unpaid rent. Nor did respondent notify Allen or Bar Counsel when his firm initiated bankruptcy proceedings in December 1993.

Bar Counsel only learned of the attachment of the firm's escrow account on May 20, 1994, after respondent changed his position as to whether the fee was in dispute and asked Bar Counsel for help in releasing the attachment against Allen's funds. Allen, however, still did not receive any funds until May 2, 1995, two years after the settlement proceeds were received, when the bankruptcy trustee paid her the original amount offered of $1,982.95. The trustee paid her an additional $1,050 on June 29, 1995.

2. *The Steinberg Matter.*

Murray Steinberg contacted Karl Carter in September 1993 to discuss a civil rights action which he had filed in federal district court. After reviewing Steinberg's papers at Steinberg's home in Richmond, Virginia, Carter agreed that Steinberg had a viable claim and Steinberg gave Carter a check for $10,000 to get Carter and the firm started on his case. The two parties did not sign a contract at that time, however, and though the firm and Steinberg continued to negotiate over the terms of the representation, no signed agreement was ever reached.

Upon his return to Washington, D.C., Carter gave the $10,000 check to respondent, who deposited Steinberg's check into the firm's general expense account on October 4, 1993, rather than the escrow account as was originally intended.[2] Respondent testified that because he was preoccupied with other

matters, he did not realize his mistake until more than a year and a half later.

On November 8, 1993, respondent was notified that the firm's escrow account at First American National Bank had been attached on behalf of the firm's landlord for the unpaid rent. The firm, in response, filed a motion to quash the writ of attachment in both the U.S. District Court for the District of Columbia and in the Superior Court. The District Court denied the firm's motion to quash on December 30, 1993, directing the firm to Superior Court for relief. The firm took no further action in Superior Court to quash the writ of attachment. On December 30, 1993, the firm, under the name Legal Counsel, Inc., filed for bankruptcy under Chapter 11. Respondent did not immediately inform Steinberg about either the writ of attachment nor the bankruptcy proceeding.

On March 25, 1994, Steinberg wrote to Karl Carter discharging the firm and requesting the return of his $10,000 advance payment with interest. However, Steinberg received no response from either Carter nor respondent, until after Steinberg had sent a third request to Carter. On June 30, 1994, respondent wrote to Steinberg informing him that although the firm's usual policy was that retainer fees were non-refundable, he would make an exception in Steinberg's case and refund the retainer without interest. However, respondent also stated that the firm would be unable to give Steinberg a refund at that time because a writ of attachment had been placed on the firm's escrow account. Respondent suggested that Steinberg contact the bank directly to try to obtain the funds. Respondent did not tell Steinberg that the money was actually in the firm's expense account, nor that the firm had filed for bankruptcy.

On July 25, 1994, Steinberg sued respondent's firm in the General District Court in

---

1. In a subsequent letter to Bar Counsel dated February 17, 1995, respondent explained that because Allen had refused the original offer, he had not made any disbursement to Allen because he no longer considered the fee to be undisputed.

2. Although normally a retainer is properly deposited in a law firm's operating account as ad-

vances of legal fees and costs, *see* D.C. Rules of Prof. Conduct 1.15(d), Nathaniel Speights, respondent's law partner, instructed Carter to deposit the check into the escrow account because Steinberg and the firm had not yet agreed upon a fee arrangement.

Henrico County, Virginia. Respondent, on behalf of the firm, moved to dismiss Steinberg's civil action on the ground of *forum non conveniens* because of the firm's non-residency in Virginia. The motion to dismiss was denied and Steinberg successfully obtained a judgment against the firm. Steinberg did not actually learn of the firm's pending bankruptcy until March 1995, when Karl Carter filed a notice of bankruptcy on behalf of the firm in response to a civil action filed by Steinberg in D.C. Superior Court to enforce his Virginia judgment.[3]

On September 29, 1994, Steinberg filed a complaint with Bar Counsel concerning the unreturned $10,000. Following a written inquiry by Bar Counsel, respondent stated that although the firm was willing to refund the money to Steinberg, it would be "unable to [do so] until the unlawful hold on our client escrow account is released by First Union Bank, N.A. [the successor bank to First American]." Instead, respondent suggested that Bar Counsel use its authority to compel the bank to release the monies in escrow. Again, respondent failed to mention that the firm was involved in bankruptcy proceedings and that the $10,000 had been deposited into the firm's operating account. On April 12, 1995, in response to a letter from Bar Counsel, respondent wrote that he had learned that the law firm's bank had released the attachment on the escrow account and that Steinberg would receive his money as soon as it was made available for disbursement. However, in May 1995, respondent notified the bankruptcy trustee that he had discovered that Steinberg's funds had been deposited into the firm's "general account," rather than the escrow account as he had previously believed. Steinberg did not receive any money until June 23, 1995, when he reached a compromise settlement with the trustee for $4,200.

Subsequent to the settlement, respondent wrote to Steinberg in August 1995, asking him to set up an appointment so that respondent could repay him the balance of the funds owed to him by the firm. However, when Steinberg arrived at the office on Sep-

tember 15, 1995, neither respondent nor a check for the remaining balance was there. In a letter to Steinberg dated November 10, 1995, respondent's law partner, Nathaniel Speights, notified Steinberg that the firm considered the debt discharged because he had compromised his claim with the bankruptcy trustee.

## B. *The Hearing.*

After three days of testimony from various witnesses, including respondent, Allen and Steinberg, the Hearing Committee determined that respondent had violated two D.C. Rules of Professional Conduct: Rule 1.15(b) (failure to promptly deliver to a client funds to which he or she is entitled to receive); and Rule 1.16(d) (failure to take timely steps to the extent reasonably practicable to protect client's interests). The Hearing Committee declined to find a violation of Rule 8.4(c) (misrepresentation), reasoning that although "Respondent took a highly technical and adversarial position" with respect to his obligations under the Bankruptcy Code, there was not clear and convincing evidence that respondent had intentionally attempted to deceive Steinberg. Accordingly, the Hearing Committee rejected Bar Counsel's proposal for a public censure by the court, and recommended instead a reprimand by the Board.

## C. *The Post–Hearing Proceedings.*

The Board substantially adopted the Hearing Committee's findings of fact but disagreed with the Committee with respect to its determination that respondent had not violated Rule 8.4(c). Instead, the Board determined that respondent had knowingly misled his client, Steinberg, by giving false information concerning the nature of the firm account into which Steinberg's payment had been deposited and by withholding the law firm's bankruptcy. Considering that respondent's benign motive was outweighed by the detrimental effect of the misrepresentation on his clients, the Board increased the recommended sanction from reprimand to public censure. Respondent filed a timely exception to the Board report and recommenda-

---

**3.** Speights, however, testified that he had filed a notice of bankruptcy in the earlier Virginia ac- tion, though he was unable to provide any documentation to support his claim.

tion, pursuant to D.C.Bar. R. XI, § 9(e) (1998).[4]

## II.

Respondent argues principally that he was prevented from promptly returning client monies as required by the Rules of Professional Conduct because the United States Bankruptcy Code permits a bankruptcy trustee to avoid transfers made by the debtor in favor of creditors. Recognizing this, respondent, who for a short period of time acted as the firm's trustee in bankruptcy,[5] sought to reimburse Allen and Steinberg through other alternative channels, including seeking the assistance of Bar Counsel, and negotiating with the succeeding bankruptcy trustee. Therefore, according to respondent, the Board's recommendation for public censure is unwarranted because he did not possess the wrongful intent necessary to establish a violation of any of the rules of professional conduct.

### A. Review for Substantial Evidence.

■ D.C. Bar Rule XI, § 9(g) requires this court to "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." See In re Ryan, 670 A.2d 375, 379 (D.C. 1996). In addition to adopting the recommendations made by the Hearing Committee, the Board has the authority to sua sponte determine that additional violations were committed if supported by the findings of record. See Bernstein, supra note 4, 707 A.2d at 376. The Board is not bound by the Hearing Committee's "ultimate" findings of fact. Id. (citing In re Drew, 693 A.2d 1127 (D.C.1997) (per curiam)). It is Bar Counsel's burden to establish by clear and convincing

evidence that respondent violated the Rules of Professional Conduct. See In re Williams, 464 A.2d 115, 119 (D.C.1983) (citing In re Thorup, 432 A.2d 1221, 1225 (D.C. 1981)).

1. Rule 1.15(b) (failure to promptly deliver to a client funds which he or she is entitled to receive).

Rule 1.15(b) requires a lawyer to "promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive." Both the Hearing Committee and the Board determined that respondent violated Rule 1.15(b) by failing to pay Joyce Allen the undisputed portion of her settlement proceeds.

Respondent argues that because his law firm filed its bankruptcy petition on December 30, 1993, any pre-petition transfer it might have made to its creditors, including Allen, would have been avoided as a preference under Section 547(b) of the Bankruptcy Code. 11 U.S.C. § 547(b) (1993). This section permits a bankruptcy trustee to avoid preferential payments made for the benefit of a creditor within ninety days before the debtor files for bankruptcy. See id. Accordingly, respondent asserts that he was effectively prevented by the provisions of the Bankruptcy Code from disbursing to Allen her settlement proceeds.

■ Respondent's argument is untenable, however, because he had sent Allen an invoice on July 14, 1993, proposing to pay her $1,982.95 out of the settlement proceeds, more than five months before the firm filed for bankruptcy. Thus, Section 547(b) would not have been applicable had respondent immediately sent Allen a check for this amount.[6] Although respondent contends

4. Bar Counsel argues that respondent failed to file with the Board any exceptions to the Hearing Committee's report, as he was required to do under D.C. Bar R. XI, § 9(b), and Bd. Prof. Resp. R. 13.2 (1995), and that consequently, respondent waived his right to challenge the Committee's findings and conclusions. We noted recently in In re Bernstein, 707 A.2d 371, 375 n. 5 (D.C.1998), that we need not decide the effect of respondent's failure to file exceptions to the Hearing Committee's report if the evidence is sufficient to support its findings. We similarly

decline to examine the issue here for the same reason.

5. There is no reference in the record to the fact that respondent acted as the trustee in bankruptcy. At oral argument respondent represented that he served in that capacity at the beginning of the firm's bankruptcy under Chapter 11, before it was converted into a Chapter 7 bankruptcy proceeding.

6. Moreover, respondent's argument is not apposite because 11 U.S.C. § 547(b) limits the trust-

that he was not obligated to pay Allen this amount because he considered the matter to be in dispute, Allen objected only to the high fee charged by the firm, but not to the fact that she was owed at least the amount offered. As the Hearing Committee found, respondent's July 14, 1993 letter to Allen, irrespective of whether or not Allen accepted its terms, acknowledged that the firm owed Allen $1,982.95. Moreover, once respondent had been notified by Bar Counsel about its investigation on September 8, 1993, he should have immediately taken steps to disburse the undisputed portion of Allen's settlement. "Having been given such notice, [respondent] could have ... taken more aggressive steps to make sure that [the funds were] sent as soon as possible." *In re Ross*, 658 A.2d 209, 211–12 (D.C.1995). Had he done so, he could have disbursed the funds to Allen more than ninety days before the bankruptcy filing in December. Thus, the facts bolstering the determination that respondent violated Rule 1.15(b) are amply supported by substantial evidence in the record. *Cf. In re Moore*, 704 A.2d 1187, 1192 (D.C.1997) (determining attorney violated Rule 1.15(b) when he failed to pay a third party seventeen months after receiving settlement proceeds).

2. *Rule 1.16(d) (failure to take timely steps to the extent reasonably practicable to protect clients' interests).*

Rule 1.16(d) states that "[i]n connection with any termination of representation, a lawyer shall take timely steps to the extent reasonably practicable to protect a client's interests," including "refunding any advance payment of fee that has not been earned." The Hearing Committee concluded that respondent had failed to meet his obligations by neglecting to inform Steinberg about his firm's 1993 bankruptcy filing until after Steinberg had filed pleadings in D.C. Superi-

or Court in March 1995. Neither the Hearing Committee nor the Board were persuaded by respondent's contention that Steinberg, as a general unsecured creditor, suffered no prejudice, despite not being immediately informed about the firm's pending bankruptcy, because in any event, Steinberg would not have been able to get his money disbursed any earlier.

■ We concur with the Hearing Committee and the Board. Because Steinberg did not demand the return of the unearned legal fee until March 1994, three months after respondent's firm filed for bankruptcy, the applicable bankruptcy provision is § 549(a). 11 U.S.C. § 549(a). Although § 549 permits the trustee to avoid post-petition transfers of property of the estate, *see id.*, this power is discretionary. *See In re Consolidated Partners Inv. Co.*, 156 B.R. 982, 984–85 (Bankr.N.D.Ohio 1993) (post-petition transfers of estate property "are only voidable, at the trustee's discretion, since § 549 provides that the trustee 'may avoid' such a transfer") (citing *In re Clark*, 79 B.R. 723, 725 (Bankr.S.D.Ohio 1987)). In this situation, because respondent had deposited Steinberg's $10,000 check into the firm's general expense account, *see supra* at 311, it became "property of the estate." Even if it was likely that the trustee would choose to avoid the transfer, however, respondent was not entitled to make that judgment call on behalf of his client. Instead, respondent should have immediately told Steinberg that the firm was engaged in bankruptcy proceedings so that Steinberg himself, and *not* respondent, could determine what, if anything, he could do in order to recover the money owed to him. By neglecting to do so, respondent failed to take timely steps to protect Steinberg's interests as required by Rule 1.15(b).[7]

---

ee's avoidance powers to transfers of "property of the debtor." *Begier v. IRS*, 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Because a debtor does not have either a legal nor an equitable interest in property he holds in trust for someone else, such property cannot be considered to be "property of the debtor" for the purposes of Section 547(b). *See id.*

7. We are unpersuaded by respondent's technical argument that because in respondent's opinion, Steinberg's money was not part of the property of the estate, he did not have to inform Steinberg of the law firm's bankruptcy since Steinberg was not a creditor. Regardless of what the Bankruptcy Rules may or may not require, under Rule 1.16(d), respondent's ethical duties were higher and required prompt disclosure of the firm's bankruptcy to Steinberg.

### 3. *Rule 8.4(c) (misrepresentation).*

The Hearing Committee declined to conclude that respondent violated Rule 8.4(c), which prohibits attorney "conduct involving dishonesty, fraud, deceit, or misrepresentation," reasoning that respondent's actions were prompted not by his desire to withhold money from Steinberg, but in the hopes of helping him get reimbursed. Therefore, respondent's actions were not "so reckless as to constitute intent." The Board disagreed, however, concluding that respondent's failure to notify Steinberg of his firm's bankruptcy was sufficient to constitute misrepresentation. We conclude that the facts found by the Hearing Committee on the record support, by clear and convincing evidence, the Board's conclusion that respondent engaged in misrepresentation. *See In re Reback,* 487 A.2d 235, 239 (D.C.1985), *vacated,* 492 A.2d 267 (D.C.1985), *part I adopted by* 513 A.2d 226 (D.C.1986) (en banc).

 "Concealment or suppression of a material fact is as fraudulent as a positive direct misrepresentation." *Reback, supra,* 487 A.2d at 239 (quoting *Andolsun v. Berlitz Schools of Languages of America, Inc.,* 196 A.2d 926, 927 (D.C.1964)). As we noted in the previous section, respondent's failure to inform Steinberg of the firm's bankruptcy was an omission of a material fact that respondent was obligated to disclose so that Steinberg could decide how best to proceed in recovering his money. Thus, because respondent did not tell Steinberg about the bankruptcy for over fourteen months, we hold that the Board's conclusion that respondent violated Rule 8.4(c) is supported by clear and convincing evidence. *See also Reback, supra,* 487 A.2d at 240 (failure to inform client of a material fact for two years sufficient to constitute deceit and misrepresentation).[8]

### B. *Appropriateness of Sanction.*

 This court reviews the Board's recommended sanction pursuant to D.C. Bar R. XI, § 9(g), which requires us to "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent disposition for comparable conduct or would otherwise be unwarranted." In determining whether a recommended sanction is appropriate, we must consider the purpose served by Bar discipline, which we have described as being "to protect the public, the courts and the legal profession." *In re Haupt,* 422 A.2d 768, 771 (D.C.1980). Thus, the sanction should reflect the nature of the misconduct, and the presence of any mitigating or aggravating circumstances. *See id.*

We have imposed a sanction of public censure for a wide range of attorney misconduct, including neglect of a legal matter, conduct prejudicial to the administration of justice, and inadequate maintenance of client records and accounts. *See In re Dunietz,* 687 A.2d 206, 212 n. 6 (D.C.1996) (citing *In re Jones,* 521 A.2d 1119 (D.C.1986)). In *In re Austern,* 524 A.2d 680 (D.C.1987), we adopted a Board recommendation for public censure in a case involving dishonesty and misrepresentation on the part of an attorney. *See id.* at 684. The Board in *Austern* considered the fact that the respondent had no prior disciplinary record and had made "notable contributions in the area of legal ethics" as being persuasive in imposing a sanction lighter than suspension. *Id.* at 683. Likewise, respondent here has no prior disciplinary record[9] and has been recognized for his contributions to the D.C. Street Law program. In addition, the Board in *Austern* "also took into account the fact that respondent's conduct was not motivated by the desire for personal gain." *Id.* The Hearing Committee, in declining to find a violation of Rule 8.4(c), found persua-

---

**8.** The Board also concluded that respondent made an active misrepresentation to Steinberg by telling him that his funds had been deposited in the firm's escrow account when respondent was aware that the money was in the expense account. The record is ambiguous at best as to when exactly respondent became aware that the funds had been deposited in the firm's expense account. Thus, we decline to hold that the

Board's conclusion was supported by clear and convincing evidence.

**9.** "The presence or absence of a disciplinary record is of obvious importance in weighing the similarities of cases and in determining where a sanction should fall within the permissible range of discipline." *In re Rosen,* 481 A.2d 451, 455 n. 5 (D.C.1984).

sive the fact that respondent acted with the express purpose of obtaining the return of Steinberg's money.

■ We do not consider that respondent's behavior was at all excusable. Despite respondent's benign motive for his misrepresentation, his clients have clearly been prejudiced by respondent's withholding of important information, particularly Steinberg, who to this date has recovered less than half of the unearned legal fee he paid in advance. Such harm warrants the imposition of a harsher sanction than the reprimand which respondent seeks, and perhaps, even the public censure that the Board recommends. Nevertheless, because we consider a Board recommendation with a "strong presumption in favor of its imposition," *In re Goffe*, 641 A.2d 458, 463 (D.C.1994) (per curiam), regardless of the severity of the sanction, *see In re Haar*, 698 A.2d 412, 423 (D.C.1997), we will adopt the Board's recommendation.

### III.

For the foregoing reasons, we adopt the recommendation of the Board and order that respondent, Iverson O. Mitchell, be, and hereby is, publicly censured.

*So ordered.*