**In re Gregory C. MITCHELL, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 02–BG–772.**

District of Columbia Court of Appeals.

Argued April 10, 2003.

Decided May 8, 2003.

Melvin G. Bergman, Beltsville, MD, for respondent.

Ross T. Dicker, Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before REID and WASHINGTON, Associate Judges, and PRYOR, Senior Judge.

PER CURIAM:

Respondent Gregory C. Mitchell takes exception to the recommendation of the Board on Professional Responsibility ("The Board") that he be suspended from the practice of law for ninety days for violating the following Rules of Professional Conduct: Rule 1.15(b);[1] Rule 4.1(a),[2] and Rule 8.4(c).[3] We accept the Board's recommendation and suspend Mr. Mitchell from the practice of law for ninety days.

## FACTUAL SUMMARY

The record before us shows that the disciplinary action against Mr. Mitchell, a member of the District of Columbia Bar since 1980, grew out of his initial representation of his wife in a personal injury lawsuit. Mrs. Mitchell was injured in an automobile accident in February 1989.

To ease the pain resulting from her injuries, Mrs. Mitchell began renting an electronic pain-reducing device known as a "TENS unit" from W.S. Medical Systems, Inc. ("W.S.Medical") in March 1989, at a monthly fee of $90.00. Later, in June 1990, Mr. and Mrs. Mitchell executed an Authorization and Assignment Agreement under which Mrs. Mitchell authorized her attorney (Mr. Mitchell) to pay W.S. Medical from any monies received in satisfaction of her personal injury claims, and Mr. Mitchell agreed "to withhold such sums from any settlement, judgment, or verdict as may be necessary to adequately protect W.S. Medical Systems, Inc." Subsequently, in March 1991, Mrs. Mitchell purchased a new TENS unit from W.S. Medical at a cost of $790.00.

When efforts to negotiate a settlement of Mrs. Mitchell's claims failed, Mr. and Mrs. Mitchell filed a lawsuit against the other motorist on February 21, 1992. According to the Board's Report and Recommendation, "Robert Boraks entered an appearance as co-counsel with [Mr. Mitchell]." A jury awarded Mrs. Mitchell $150,000, later reduced to $125,000, and Mr. Mitchell $20,000; interest was added to each award.

In partial satisfaction of the judgment, Mr. Mitchell was sent two checks on April 25, 1995, one in the amount of $125,000, and the other $20,000. He placed the funds in his client trust account, but did not notify W.S. Medical that the judgment funds had been received. He distributed $36,250 to Mr. Boraks in payment of his legal fee; and the remaining $108,750 to Mrs. Mitchell. Later in 1995, Mr. Mitchell received interest payments on the judgment totaling $16,849.08, which he retained as a loan to his law firm. Mrs. Mitchell approved the loan.

Beginning in May 1989, W.S. Medical kept a record of its attempts to collect

1. Rule 1.15(b) provides in pertinent part: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person."

2. Rule 4.1(a) states: "In the course of representing a client, a lawyer shall not knowingly:

(a) Make a false statement of material fact or law to a third person...."

3. Rule 8.4(c) specifies: "It is professional misconduct for a lawyer to: (c) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation ...."

sums owed for the rental and purchase of the TENS unit for Mrs. Mitchell. The record shows that calls made to Mr. Mitchell's office, primarily by Pamela S. Malott, continued into 1999. Ms. Malott testified that she sometimes spoke with one of Mr. Mitchell's employees, and sometimes to Mr. Mitchell. She asserted that Mr. Mitchell falsely told her four times in 1995 that the Mitchell's lawsuit was on appeal.[4] Ms. Malott spoke with Daniel Fisher, one of Mr. Mitchell's employees, in November 1996 to inquire about the status of the appeal; in a return call, Mr. Fisher advised her that the appeal was still pending. On February 19, 1999, William Solomon, the founder and initial owner of W.S. Medical, spoke with Mr. Mitchell about the outstanding bill for Mrs. Mitchell. Mr. Mitchell at first took the position that the matter had been "taken care of a long time ago," but eventually agreed to settle the account for $550.00. However, Mr. Mitchell did not send a check to W.S. Medical in accordance with his oral agreement. In fact, no payment was made until February 2002, long after this disciplinary action commenced.

During the hearing on the charges against him Mr. Mitchell essentially took the position that he had instructed Mr. Fisher to return the new TENS unit in 1992, and that his failure to pay W.S. Medical's bill was inadvertent. Mr. Fisher stated that Mr. Mitchell told him to return the new TENS unit, but he put it in the basement and failed to do so. In 1998, Mr. Mitchell discovered that the TENS unit had not been returned to W.S. Medical. During his testimony before the Hearing Committee, Mr. Mitchell stated that he again instructed Mr. Fisher to return the unit to W.S. Medical.

The Hearing Committee discredited the testimony of Mr. Mitchell and Mr. Fisher, stating in part:

> The Hearing Committee accords no weight to the highly improbable, contradictory testimony given in this case by [Mr. Mitchell] and [Mr.] Fisher. We conclude that the evidence clearly and convincingly establishes that [Mr. Mitchell] was well aware of his wife's outstanding indebtedness to W.S. Medical in April or May 1995 and that his failure to notify W.S. Medical of his receipt of the judgment payment and deliver the funds to which W.S. Medical was entitled out of those payments was intentional and with full knowledge of what he was doing.

The Board accepted the credibility determination of the Hearing Committee, and declared that: "[Mr. Mitchell's] credibility also was impeached by his own testimony that, when [Mr.] Solomon called him in 1999, he falsely denied his wife's debt to W.S. Medical, even though, by his own testimony he became aware in 1998 that [Mr.] Fisher had not taken care of the debt." The Board concluded that Mr. Mitchell violated Rules 1.15(b), 4.1(a), and 8.4(c) of the Rules of Professional Conduct. Mr. Mitchell filed an exception to the Board's Report and Recommendation.

### ANALYSIS

In this court, Mr. Mitchell argues that his violation of Rule 1.15(b) was inadvertent; that the findings as to Rules 4.1(a) and 8.4(c) were not supported by substantial record evidence; and that the ninety-day suspension for his conduct is inconsistent with other similar dispositions and is

---

4. While question was raised as to whether Ms. Malott spoke directly to Mr. Mitchell on the occasions when she called his office, the Board credited her testimony, but not that of Mr. Mitchell. The Board stated that "the substance of some of the [Ms. Malott's] log entries reinforces the conclusion that [she] was in fact speaking with [Mr. Mitchell]."

unwarranted. Bar Counsel supports the Board's Report and Recommendation and contends that Mr. Mitchell's conduct was intentional; that there is substantial evidence in the record to sustain the charges against him; and that the ninety-day suspension is appropriate and consistent with that imposed on others for similar rules violations.

### Rule 1.15 (b)

■ Although he denied a violation of Rule 1.15(b) before the Hearing Committee, Mr. Mitchell now acknowledges the violation but asserts that it was inadvertent. Based upon our review of the record in this case, including the testimony of Ms. Malott and Mr. Solomon; and in light of the credibility determinations made by the Hearing Committee and accepted by the Board, *see In re Anderson,* 778 A.2d 330 (D.C.2001), we conclude that Mr. Mitchell was aware of his wife's indebtedness to W.S. Medical at least as of March 1995, and continuing to February 1999. Nevertheless, when he received the judgment funds from the personal injury lawsuit in April or May 1995, and the interest payments at a later date, he failed to notify W.S. Medical. This failure constituted a clear violation of Rule 1.15(b), which states unequivocally: "Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person."

### Rules 4.1(a) and 8.4(c)

■ Mr. Mitchell maintains that he made no false statements in violation of Rule 4.1(a)'s clear statement that "in the course of representing a client, a lawyer shall not knowingly: (a) [m]ake a false statement of material fact or law to a third person." He places the blame for any false statement on Mr. Fisher. Similarly, he claims that he did not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation," in violation of Rule 8.4(a).

Since the Hearing Committee discredited Mr. Mitchell's and Mr. Fisher's testimony, and the Board accepted and followed the Hearing Committee's credibility determinations and factual findings, there is substantial evidence in the record to support the Board's Report.[5] When W.S. Medical sought to collect the money owed for the TENS units sent to Mr. Mitchell, he told the company, or instructed Mr. Fisher to inform the company, that the personal injury suit was on appeal, when it was not. Mr. Mitchell also initially told Mr. Solomon that the matter had been "taken care of a long time ago." Simply put, Mr. Mitchell made false statements to W.S. Medical regarding the status of the Mitchells' personal injury suit and the handling of the indebtedness relating to the TENS units, and in doing so engaged in dishonesty and misrepresentation. *See In re Shorter,* 570 A.2d 760 (D.C.1990); *In re Mitchell,* 727 A.2d 308 (D.C.1999).[6]

---

**5.** Mr. Mitchell's contention "that, at best, the testimony of Ms. Malott versus Respondent and Mr. Fisher is in equipoise, and a long way from the clear and convincing standard," is unpersuasive. In essence he attacks the credibility determinations and factual findings of the Hearing Committee, but as we said in *In re Temple,* 629 A.2d 1203 (D.C.1993): "[F]actual determinations ... fall primarily within the sphere customarily left to the factfinder, *i.e.,* the credibility of the witnesses and the weight, value and effect of the evidence."

*Id.* at 1208 (footnote omitted). Indeed, "[t]he factfinder who hears the evidence and sees the witnesses is in a better position to make such determinations...." *Id.* (citing *In re S.G.,* 581 A.2d 771, 774–75 (D.C.1990)).

**6.** Mr. Mitchell argues "that the violation of Rule 8.4(c) ..., is cumulative with the violations of Rules 1.5(b) and 4.1(a). He did not raise this argument before the Hearing Committee nor the Board, and we are not obliged to consider it. *See In re James,* 452 A.2d 163,

### The Sanction

■ Mr. Mitchell claims that the ninety-day suspension imposed on him "is not consistent with cases of similar conduct and is unwarranted under the circumstances of the instant case." He maintains that a thirty-day sanction is appropriate if dishonesty is found, and a public censure if the finding of dishonesty is not sustained.

Our practice is to "adopt the Board's recommended sanction 'unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would ·otherwise be unwarranted," *In re Bernstein*, 707 A.2d 371, 377 (D.C.1998) (quoting D.C. Bar Rule XI, § 9(g)(1)(1997)). "Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed." *In re Shaw*, 775 A.2d 1123, 1126 (D.C.2001) (internal quotation and citation omitted).

Here, the Board directs us to cases where the sanctions for conduct comparable to that engaged in by Mr. Mitchell range from disbarment to censure. The cases include *In re Corizzi, supra,* note 6 (disbarment for a violation of Rules 1.3(b)(2), 1.14(c), 3.3(a), 3.4(b), 4.1(a) and 8.4(c)); *In re Sandground*, 542 A.2d 1242 (D.C.1988) (ninety-day suspension for aiding client to make false responses to discovery requests); *In re Zeiger*, 692 A.2d 1351 (D.C.1997) (sixty-day suspension for violation of Rules 3.4(a), 4.1(a), and 8.4(c)); *In re Mitchell, supra,* (public censure for violation of Rules 1.15(b), 1.16(d), and 8.4(c)).

We are satisfied that Mr. Mitchell's conduct, although serious, was not as extensive as that found in *In re Corizzi* where the respondent's conduct included "instructing his clients to testify falsely," failure to advise a client "of two $10,000 settlement offers until after he had rejected them," "making false statements to [counsel] and to the court regarding the date of his representation of [a client]," *id.* at 440–41. We are persuaded, also, that Mr. Mitchell's case differs from that of *In re (Iverson O.) Mitchell, supra.* There the Hearing Committee did not find a violation of Rule 8.4(c) because it concluded that Mr. O. Mitchell was not motivated to act for personal gain, had "no prior disciplinary record," and had "been recognized for his contributions to the D.C. Street Law program." *Id.* at 314.

Of the three cases cited above, *In re Sandground, supra,* where a ninety-day sanction was imposed, is closest to Mr. Gregory Mitchell's conduct, although the duration of the misconduct there was much shorter (nine months) than that involved here (almost four years). Compared with *In re Sandground,* the thirty-day suspension advocated by Mr. Mitchell is inappropriate given not only the duration of his misconduct, but also his failure to pay W.S. Medical promptly after he was notified of Bar Counsel's action against him in June 1999. Despite that notification, and his own agreement with Mr. Solomon in 1999, to pay $500 to compromise the outstanding indebtedness, Mr. Mitchell did not pay off the debt until February 2002.[7] Conse-

169 (D.C.1982) ("We need not decide the merits of this issue ..., because respondent has not preserved his right to raise it in this court."). Even if we did consider this argument, Mr. Mitchell could not prevail. *See In re Corizzi*, 803 A.2d 438 (D.C.2002) (respondent who made false statements violated Rules 3.3(a), 4.1(a), and 8.4(c)).

7. Mr. Mitchell's argument that he was not certain whom to pay (presumably Mr. Solomon who was the founder and owner of W.S. Medical or W.S. Medical, L.L.C. to which W.S. Medical sold some of its assets in 1998) is disingenuous. A simple timely inquiry by Mr. Mitchell or his counsel would have resolved any doubt about the person or entity to be paid.  ·

quently, we accept the Board's recommended sanction.

Accordingly, for the foregoing reasons it is

ORDERED that respondent Gregory C. Mitchell is hereby suspended from the practice of law in the District of Columbia for a period of ninety days, effective thirty days after entry of this opinion. We call respondent's attention to the requirements of D.C. Bar Rule XI § 14, relating to suspended attorneys, and to § 16(c) concerning the timing of eligibility for reinstatement as related to compliance with § 14, including the filing of the required affidavit.

*So ordered.*